Good morning, your honors. Robin Workman for the appellants. This case also arises and appears before the court based on the district court's 12B6 ruling. Now, although the district court recognized the purpose and the intent of the Song-Beverly Act. And I will quote, that the act was intended to combat practice of collecting customer information that would be used for the sole benefit of the merchant corporation, Red Box, the district court didn't really speak to the privacy concerns, though, that I understood were behind the initial legislation. I mean, there's not a concern here that your client's been added to some mailing list or phone list or something, is there? Yes, your honor. And if you look at the complaint, it's not a complaint. It's not a complaint. We specifically allege that Red Box uses this information for its marketing purposes. Well, that's not inconsistent with what I just said. That is, in particular with regard to the zip code, is there any evidence that Red Box uses the information to try to identify exactly who the person is beyond, as I understood, the zip code information was being used or was? Where do our customers come from? If that's the use, how does that infringe upon your client's privacy? It infringes upon the privacy rights, because the information that is being obtained is defined as the personal information identified, personal identification information that the act specifically tells retailers they cannot do. Well, that's not the question I posed, though. My question is, how does that particular piece of information and that use infringe upon your customer's or your client's privacy? Because it takes information that is defined as private, and it uses it for its own beneficial purposes. That, by definition, violates the terms of the act, and then therefore you You started by talking about the purpose of the legislation. It seemed to me the purpose of the legislation was not to combat what you're describing now. It was meant to combat more personal identification of the kind that actually get to the human being. Using information about where your customers live in order to put red boxes, I have trouble seeing how that offends your client at all. Specifically, the Pineda court, the California Supreme Court said that this information is private information. And what the court also said is that this legislation was intended to provide robust protection, consumer protection against retailers obtaining this information, which the Supreme Court, the California Supreme Court said is governed by the act and using it for its own business purposes. That's the purpose of the act. Retailers cannot take this information that the act defines as the PII, the type of information they cannot obtain, and use it for their own business purposes. They cannot do it under this act. And by definition, Your Honor, I would assert that that, therefore, violates the right or the privacy of these individuals, although I don't know if that finding is necessary to find a violation of the act. What the act procludes It seems to me it would be helpful that we may have to decide it on that basis. One question is whether the act covers this. Yes. The second question is, if it does, does it matter whether that was why the legislature passed the act, whether this is what motivated the legislature, this type of action of taking it for its own use, which doesn't injure or may not injure the privacy rights of an individual? But did the legislature in the statute prohibit this kind of a use, whether it really offended the consumer or his rights or not? The California Supreme Court, in interpreting the act, made a broad decision where the act wasn't intended to do, to apply to online that whole category of things. Yes, Your Honor. This is a narrower question. Did the act, even though on its face it may have prohibited this, was its purpose to cover this particular type of action, which would lead to a whole series of questions about whether excluding particular types of business activity was really what the legislature had in mind when it enacted this statute? My own personal views, which have nothing to do with this, is I don't know why they passed this act. I mean, the thing that would hardly offend me as a consumer would be if somebody knew my zip code number. But that doesn't matter. They passed a statute for some unknown reason that protects that information, whatever you use it for, I think. But I think we should keep in mind two different things. One, does the statute prohibit this particular act? If you look at the legislative history, which is, we've provided the court with the record and is quoted extensively in both Panada and Apple, the California's recent determinations on this issue. The legislature's purpose in passing this act was to stop retailers from obtaining what is defined as non-business use. That is the stated purpose that the legislator said, this is the reason why we pass the act. Now, the second question, is this type of transaction governed by the act? We submit that the district court erred because the court equated this type of transaction, the red box transaction, with online transactions. Now, if you read Apple, then you understand that this type of transaction, the red box transaction, is governed by the act. And where you go to find it is when the court is discussing the subsection, subsection D, upon which red box bases the bulk of their brief, the fraud prevention section in the statute. And if you look at, when the court is discussing it, it says, look, with online transactions, we don't see that there's a fraud mechanism protection in the act. So therefore, we don't believe the legislature had this in mind, because this type of commerce was not even a twinkle in Steve Jobs' eye at the time the statute was passed. Then it goes on to say we only need some mechanism for fraud protection. It sounds sort of complicated and tied up in a lot of sort of state law and policy. Why shouldn't we send this to the California Supreme Court? Let them figure it out. That is often a question. I think the reason why you do not need to is because the intent of the act is clear. The legislative history is clear as to what it was intended to do, as reflected in both the Apple and the Panetta recent decisions. I expect your colleague on the other side of the aisle doesn't think it's quite so clear in the same way. So it goes back to the question. If there is a, if we decide there's really a dispute here, is it a question we should answer or a question the California court should be asked to answer? I think that's a policy decision that this court makes when it's faced with determinations. If the statute is clear enough to decide, I mean, if you just sort of looked at the, if you looked at the statute itself, I would never have guessed it. But this is why I think the intent, what the California Supreme Court is clear enough for this court to decide. If you look at when the court says the 2011 amendments do not apply and can't be used to give any guidance as to Internet transactions, the court says why is that different from the pay at the pump transaction? Why is it different? That we can't use and look to that legislative history. And the court says, well, the pay at the pump transactions, you have to leave your house, go to the place of business. The same in this type of transaction. The person has to physically have that credit card to be able to swipe it. The same in this type of transaction. And the person is available to be seen either by an attendant or video camera surveillance that the merchant may want to use. And because in that circumstance that is this type of transaction is on equal footing with the pay at the pump transaction where the California legislature in 2011 specifically was faced in the wake of the Panada decision with the howls of the retailers saying, look, we need you to limit this statute to only allow us not to collect this personal identification information in face-to-face contact. Let's say we get to that point. Why doesn't this fall under the deposit exception anyway? The credit card is put in there, and if you don't return the movie on time, they keep charging a credit card. If you lose it or decide to keep it, they charge a credit card. Why isn't this just fully within that exception? First, there's no evidence at all in any complaint that this was a deposit. So there's no evidence on the 12B6 standard by which this court could find that this was a deposit. As a factual matter, the actual transaction that occurs is not a deposit transaction. At no time does Red Box tell these individuals you're going to be charged a deposit. At no time, like when I go to the store and I buy that milk in the bottle, I have to pay my dollar deposit. When I get back, when I return that bottle later, that does not happen in this transaction. The only thing that happens in this transaction, your credit card is immediately charged. That one-day rental, as soon as you take it out. If you decide to just keep it, they're going to have to go sue you in a small claims court. Do you think anybody imagines that? That if you decide to keep the movie, they just have to find you and file a lawsuit in order to collect? Nobody imagines that. You've put your credit card in, you've taken out a valuable product, and until you return the product, your credit card's on the hook for that. That's sort of a pretty much anybody's assumption that has a credit card. This is not, there is nothing in this transaction that indicates in any way that Red Box has kept any deposit for this DVD that one takes out. What happens? It's common sense. They don't just sort of charge a dollar and let you walk away with a DVD or a Blu-ray that's worth $20, $30. You don't dispute, they actually do charge. Your comment is based, I take it, on the structure. They don't charge you $25 and refund the $24. They charge you one and then one and then one and then one and so forth. Yes, Your Honor. What's the practical difference? The practical difference is that a deposit is some value of consideration that is given, that is held. Something is transferred. There's a reason why there's no legal argument behind this deposit argument. There is no authority cited, no evidence cited, because this deposit that they're arguing, there's no support for this notion. There's no legal transmittal of something deposited in exchange for something else. If you go to a hotel, if you rent a car, all of these transactions are different than the transaction occurs here. At most, this is a rent-to-own transaction. You get your renter, you rent it for one day, and if you only have $2 available... How is the hotel and the rental car different? A, you're told that you're putting down a certain value for a deposit for the rental of the car. In fact, a rental car, which I'm doing this week, and I don't expect to see a bigger charge from budget rent-a-car. It doesn't work that way. They charge what I actually expend. Now, in fact, if I abscond with the car, the charge is going to be a whole lot higher. If I break something and so forth and haven't taken their waiver, the charge is going to be higher. But the practical structure of the transaction, it's not often the case they take money out at the beginning, and consumers would probably object if they do. Conceptually, you're giving them your credit card, so they've got some kind of hold on you, so they can continue to charge. So it may not be literally post the deposit and get it back, but what's the practical difference? This is the difference. I rent a car. There's a certain amount for the deposit in that car. If I never ---- It doesn't work that way all the time. It doesn't work that way for me this week. I do not have something charged to my credit card at this moment. I'm not saying it's charged to the credit card at this moment. I'm saying you are alerted to an amount of a deposit. And you think the person getting the DVD out of the red box thinks that there's not something more than $1 he's going to be held accountable for if he doesn't return the DVD? This is the difference. You, if they want, the rental car company, if they want, you abscond with the car. Then they have to sue you for the value of the car. They don't get to automatically deduct the value of the Ford Toyota. The credit limit is not big enough to cover the car. Exactly. And so the difference, because it's more like a rent-to-own situation, Your Honor. You rent that DVD. You're charged every day. If you only have $2 worth of credit on your credit card ---- I think they in fact do charge you your credit card. You may not exceed your limit if you have a limit, but they're going to go to the limit if you don't come back with the car. Same thing with a hotel room. You go, you leave a credit card, and let's say it turns out you overstay. They charge you an extra day. Or let's say after you leave, you've taken the television set. Not you. Or something valuable in the room. They have art on the wall or whatever. And they check after when it's gone. They charge you a credit card. And it's well understood that the credit card serves as a guarantee that you're going to be out of there when you said you would be within the time, and that you're not taking anything more valuable than a shampoo. In the hotel circumstance, the deposit for the hotel, the only deposit that I have ever seen is a deposit for a room. And you're told about that up front. If I steal the TV, I've never seen anything like that. I'm going to be sued for theft of a television. I'm hoping that you didn't steal any TV, so that's why you haven't seen it. But the difference is here, there is nothing in the record. Have you ever been in a hotel room and have it show up a couple of days later that the minibar, there's stuff missing from the minibar? It's happened to me. And sometimes it turns out you go in there and you jostle the bottles and the thing automatically charges your credit card. Or sometimes the person ahead of you tilts them. So I've called up and I said, hey, what's this charge? They said, well, your minibar. I said, no, I didn't use the minibar. They take the charge off. But that's because I guess they believe me that I didn't actually. Well, of course they would, Your Honor. Well, no, I mean, they don't know who I am. I mean, I think in a case like that, but they do charge you. They do actually. Charges show up days later for stuff in the room that's consumable, like minibar. The difference is, again, you are informed up front that that big, long sheet that you sign when you go into the hotel, somewhere in there tells you about the minibar. You know, I am actually one who reads those sheets. There's nothing like that there. There's nothing like it. There's nothing like it that if you take the house code or whatever, we're going to charge against your credit card. It's just misunderstood. That's how it works. Anyway, you're out of your time. Out of time. We'll hear from opposing counsel. Morning. May it please the court. Eric Miller from Perkins Coie on behalf of the Apple, the Redbox. Looking for a trip to San Francisco. Are you looking for a trip to San Francisco? That's where the California Supreme Court meets. Any of you on that? No, Your Honor, we have not sought certification. We don't think that certification is necessary. If the court disagrees with us. It's sort of odd and complicated and fairly big credit card. Pump transactions have been around for a long time where you put in your credit card and they ask you for the for the zip code. Those have been around for a long time. But vending machines and retail locations that use credit cards are fairly new. They have them in airports, I guess, where you can buy electronic stuff. And Redbox is another example. But they're just sort of at the ground floor. And why is it a situation like Apple where, you know, you've got a whole new field opening up and really it's a state Supreme Court that should be figuring out what state law means in this context? Well, I think the answer to that is twofold. And first, the one point I would just emphasize is that there are, in fact, two different independent grounds on which the district court could be affirmed. And when I get to the deposit one later in that, that I think doesn't raise any of the. For the time being, I'm limiting the certification question to the basic question as to whether this is covered at all. We can talk about the deposit. I realize that's a more fact specific. On the on the question of whether electronic kiosk transactions are covered at all. The analysis in Apple in our submission suffices to resolve the issue here, because the key conclusion that Apple made, the court made there, is that the anti-fraud mechanism in 1747.08d, that is the in-person presentation of a driver's license and examination of the license against the person to see that the person really is the person with the credit card. The Apple court said that that's the key to the statute and where that mechanism is not available, which it isn't in an iTunes transaction, which it isn't in the Redbox transaction, which is essentially the equivalent of iTunes, except that you're using a machine provided by them rather than your own computer and you're getting the DVD in physical form. It's different in many ways. It's different in that you use a physical card. You actually need a physical card to use Redbox, whereas online you can just punch in a bunch of numbers. And that creates a whole nother level of possibility of fraud where you don't actually need a physical card. You could put in, by brute force, you could put in combinations of numbers and hope to, I mean, I don't, I'm not versed in the ways of fraud, but obviously there are more ways to commit fraud when you don't need a physical card. The second one is that the Redbox units are in retail stores, which have to be open to the public. You can't access them when the store is closed, right? No, Your Honor. Some of them are in retail stores. Many of them are outside of retail stores. Some are outside? Some are out in the parking lot and it's there 24 hours a day, even if the store is closed. Okay, fair enough. I didn't know that. I've only ever seen them in retail stores. And I guess the other point that they suggest is that you could have either people there to watch or, if that's impractical, you could have like ATMs. I'm pretty sure ATMs take your picture or have a video camera. If you go in there and, you know, do your thing, they have a video of the transaction. That's possible with a Redbox, with a vending unit that's not possible to do at home. Well, in fact, it would be possible in a lot of iTunes transactions where you're using your phone that has a camera in it. You're using your Apple computer that has a webcam in it. It's hard for me to see how it would promote privacy to have people have their pictures taken when they're doing an iTunes transaction or how it would promote privacy to... You couldn't have confidence the person, I mean, you can use, say, take a picture of yourself, but there's no way of being sure that the picture that's sent in response to the inquiry. If you're in front of an ATM, they're taking a picture of the person standing there, and it's the same kind. I mean, as I say, I don't think that really does much to promote privacy, but it also doesn't do much to combat fraud, because unless you don't have the driver's license, there's nobody looking, who's going to be looking at the picture seeing that the person really is the person who's on the credit card. And that goes back to the point that you made earlier. The ATM machine uses it for that purpose, hoping once they've got the person that used the stolen ATM card, they now have a picture of that person. I mean, so it combats fraud in some fashion. It's meant to be some kind of deterrent. It is an indirect deterrent to fraud, but it's not the mechanism that the legislature contemplated. And while it is true, Judge Kuczynski, that one difference between iTunes and Redbox is that you have to have a physical card, nothing guarantees that the person with the card is in fact the person who's authorized to use the card. And that's what Apple said. The court said that there has to be some mechanism by which retailers can verify that a person using a credit card is authorized to do so. There's no way for the machine to determine that it's really your card and that you're the one who's authorized to use it. So in that respect, the Redbox kiosk transaction is just like the iTunes transaction. I mean, I can certainly see the argument. You could say, I mean, this is really something that falls in the sort of gray area between a face-to-face transaction and an Internet transaction. Face-to-face transaction, you have a human being there who can say, show me your ID, and then they compare your face, I mean, your face, I mean, the person's face with the face on the ID with the name on the credit card. This doesn't always happen, but it often happens. And then they don't need your zip code because you've got this human being doing this. On the Internet, your computer, for reasons just Chris pointed out, this could all be a lie. And the vending machine is sort of in between. You could have, with enough will, you could do what ATMs do. You could have an individual PIN. So in order to rent Redbox, you would require an account. You could require a, you could have mechanisms to take photographs or perhaps videos of the transaction being conducted. So you would not have instantaneous verification, but you would have post-verification as to who actually used the ATM. Now, possibly expensive, and perhaps it would impact the business model, but I'm not sure that you can say it's covered by Apple. But both of those mechanisms, one could imagine in the Apple context, you could set up some sort of account with a PIN that you have to use in order to download music, or they could use the camera on your phone when you're downloading music. Well, Apple does have a PIN. I mean, if you're going to charge something to the Apple store, you've got to put in your Apple ID. I did it by accident once, but I did it. I hope you got a credit. I clearly did not think that that was sufficient to satisfy the requirements of the statute, which, again, contemplate a verification of a driver's license by a person. We're struggling to find analogies. The gasoline pump is the one that strikes me as being the closest, and we've got this whole discussion as to what do we make of the subsequent legislation regarding pay at the pump. You've talked about that, but why isn't that legislation something that should be taken by us to suggest that, A, that kind of transaction is meant to be covered, because otherwise you wouldn't need a carve-out, and, B, the carve-out doesn't include your client's red boxes. And, C, if I may add, that if the legislature is not happy with it, it can go back and add a red box, if I may. And the answer to that is the answer that the court gave in Apple, and that is that the 2011 amendment to the statute is not a basis for inferring anything about what the legislature intended in 1990 when it enacted this statute. And red box and iTunes are identically situated with respect to the chronological analysis, and that neither of them existed in 1990 when the statute was initially passed. They were both around by 2011 when the gas station amendment was passed. When you argue that, it really makes me nervous, because I don't understand what they meant there. How could you not understand what the legislature is thinking? How could you ignore what they do in 2011, when the Internet is in full swing, and not draw the inference that they go ahead and they deal with pumps and don't deal with the Internet? You know, they're sort of like, you know, the big, you know, the crocodile and the bathtub. They ignore that. So how the California Supreme Court said, oh, well, that tells us nothing at all, whatever Your Honor may think of their reasoning, that is what the court said quite clearly. And the reasoning that they gave was that the legislature in 2011 was focused on one very specific problem. There was lots of pending litigation against gas stations, and they weren't trying to comprehensively reevaluate how to update the Song-Beverly Act for modern technology. They were just focused on the problem of litigation against gas stations. If the legislature hadn't done this, that a court should? If the legislature had not adopted the gas station, that would be, you know, would they have been covered under the original statute without the 2011 amendment? I think that would be a much more difficult question. A gas station, I would say, is significantly different from both iTunes and Redbox in that while the pump may be unattended, there is generally, not always, but generally a gas station employee who's on the premises, who has some ability to watch what's going on, and therefore the fraud concern is somewhat different than in a completely unattended. How many other things are there like this that aren't in the statute that the courts are going to be asked to cover that are not covered on the face of the statute? Because, I mean, if we could send the whole problem to the California Supreme Court and say, you worry about all these exceptions that people are going to ask for, I'd feel a lot better about it. I mean, they deserve it. The legislature passed this, and they can spend the next 10 years figuring out what they might have put in the statute if they had thought of it. But I guess you say you have a stronger argument because of the pumps, and they put them in, and so this ought to go in because it's similar to the pumps, if I understand you. The line that the legislature drew, as interpreted by the Supreme Court in Apple, is between transactions where you have an opportunity for face-to-face, in-person verification of a credit card, as contemplated in subsection D, which are covered, and ones where you don't, which Apple says are not. And the gas station amendment addressing one particular problem didn't upset that balance in the judgment of the California Supreme Court. If I could turn in the last couple of minutes to the deposit question. All of plaintiff's arguments against the proposition that this is a deposit rest on the premise that to be a deposit, there would have to be a charge placed on the credit card. So if the maximum rental is $25, that they charge you $25 and then you get it back. If that were the transaction, that wouldn't be using the credit card as a deposit. That would be using $25 as a deposit. If they actually have your money, they're not using the credit card. The money is a deposit. When you use a credit card as a deposit, what you're taking is the right to charge the credit card if there's loss or damage or default, just as in the rental car and hotel room context that the court mentioned. You may recall that back when paper transactions were common in the credit card context, sometimes when you left a deposit, they would run an imprint of your card and you would sign it. And then when you brought back whatever it was that you had borrowed, they would rip up the paper. That's an example of using a credit card as a deposit because you've taken the right to put a charge in the event that there's some loss or damage. And this is the electronic equivalent of that. There's no need for factual development on this question because the relevant facts, everybody agrees on what they are. The plaintiff's complaint alleges correctly that the way it works is that there's an initial charge for the first day and then later on, when you bring it back or if you hit the maximum period without bringing it back or if you bring it back damaged, then there's some subsequent charge. And the credit card is being taken to secure the ability to collect that subsequent charge. And so that falls squarely within the statutory exception for deposits. There are no further questions. Thank you. Yes, Your Honor, I wanted to clarify one point. The reason why this 2011 legislative history is applicable to this circumstance and the Apple court said it did not apply to the Internet transactions is there has always been an exception for certain types of transactions involving these gas pumps. In the 1991 cleanup amendments, there was an exception to section 1747.03 for automated dispensing outlets to obtain or purchase petroleum products. And the California Supreme Court has limited it in only two circumstances, two exceptions, the one in 1991 and the one in 2011. And the California Supreme Court is quite clear that when a statute lists an exception, the courts are not to interpret others to exist into a statute unless there's clear legislative intent to support that. Could you tell me why on the deposit argument, why this situation doesn't fit literally within the terms of the statute? If the credit card is being used as a deposit to secure payment in the event of default loss damage or other similar circumstance? This is not a deposit. It is you're charged every day for a use. Every day you get a charge for a use. You do not get charged, it is not a deposit. There is no circumstance. Well, you just heard, I'm sure you just heard from your colleagues saying, it doesn't say money, it says credit card. And in fact, they are holding the credit card information and reserve the right and do exercise that right to impose additional charges on the value that is transferred. A deposit doesn't always take the form of money. But it has to be something. I mean, a bail bondsman will take a deposit in the form of jewelry. It doesn't say cash, it's a credit card that's being held. Perhaps, perhaps. The point in this circumstance, and the reason why I do not think it falls within the terms of the statute, is because a deposit implies that something is transferred, whether it's jewelry or whatnot, in a certain amount is transferred. That's not what happens here. It says the credit card is being used as a deposit. Now, if jewelry is being used as a deposit, you're going to keep the jewelry. The credit card, this says specifically, if it's a credit card that's a deposit, that would mean to me that if ultimately you didn't pay, they're going to seize your credit card. But they do not do that. And that's why this must refer to money. It must refer to amount of remuneration that is paid. They don't seize your credit card. So what the deposit is, it must be some amount or something of value. And Red Box does not work this way. Maybe you should hear Judge Reinhart's question. I'm sorry, Your Honor. The statute seems to contemplate, for some reason, that the credit card is being used as a deposit. Now, when would the credit card be used as a deposit? If there is a value associated with the credit card. What kind of credit card would have more value than another? I don't mean the value on the card. I mean the value for the product for which the deposit is obtained. If I go down to United Rentals, I want to rent the forklift, they're going to tell me the deposit for that is going to be X hundred dollars. You're going to know what the value of the deposit is. It's not just the physical card that they're taking. It has to be something of value. Why does it have to be a specific amount? Why can't they say you leave the credit card and it's a deposit for whatever value up to the total of the hotel room or the rental car or the DVD? Not a specific amount. Why does it have to be a specific amount? I don't know that it has to be a specific amount, but I know this, Redbox would have to say this is a deposit. They do not. The evidence is unequivocal about this. Nothing is mentioned to any customer that there is a deposit for this DVD. What the customer is told is you're charged a dollar a day plus tax. Every day you keep it, you get charged a dollar a day plus tax. That's not a deposit for the eventuality that you may return this in the future. It is a charge for your daily use of the product. That is how it is different, Your Honor.
judges: Kozinski, Reinhardt, Clifton